# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03350-SBP

J.A.H.,

      Plaintiff,

v.

MARTIN J. O'MALLEY,[1] Commissioner of Social Security,

      Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      This civil action is before the court pursuant to Title II, 42 U.S.C. §§ 401, *et. seq.*, of the Social Security Act (the "Act"), for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff[2] J.A.H.'s application for disability insurance benefits ("DIB"). After consideration of the briefs and the administrative record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED as follows.

## BACKGROUND

      Plaintiff seeks judicial review of the Commissioner's final decision denying his DIB application filed on October 17, 2019, alleging disability beginning February 25, 2019.

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[2] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

Plaintiff's claim was denied initially on June 2, 2020, and upon reconsideration on October 13, 2021. ECF No. 8-2 at 12.[3] An Administrative Law Judge ("ALJ") held an evidentiary hearing on March 8, 2022, *id*. at 39-104 (transcript). The ALJ held the record open for Plaintiff's representative (Ms. Rebecca F. Sharp, an associate of Plaintiff's counsel) to submit Plaintiff's pay stubs from his most recent employer (Acara) and to submit a description of Plaintiff's former job at another former employer, Par Tech. *Id*. at 12. The ALJ received the pay stubs, but Plaintiff's representative submitted only a letter stating that they could not obtain the job description. *Id*. The ALJ thereafter issued a ruling on May 25, 2022, denying Plaintiff's DIB application. *Id*. at 12-38. The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on October 25, 2022. *Id.* at 1-6. Plaintiff timely filed his complaint with this court seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 7, and jurisdiction is proper pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff was 55 years old on his alleged disability onset date (February 25, 2019). ECF No. 8-2 at 46 (transcript). He completed high school, completed specialized job training or trade school (in auto mechanics), and attended junior college. ECF No. 8-3 at 105, 327. He worked many years in technical support and customer support positions, including his most recent job that ended in October 2019. *See, e.g.*, ECF No. 8-6 at 315 (Ex. 2E, work history report by

---

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

Plaintiff dated November 4, 2019); *id*. at 328 (Ex. 3E, disability report by Plaintiff, dated

November 4, 2019). Plaintiff asserted that he was disabled due to several physical impairments,

and at the reconsideration level, also due to mental impairments. As relevant here, he alleged

physical impairments of a back injury, neck injury, and knee injury; right arm and hand soreness

and loss of grip strength; and memory loss. ECF No. 8-2 at 18; ECF No. 8-3 at 326 (disability

form alleging back, neck. and knee injuries).

## ALJ's DECISION

In her final decision, the ALJ applied the five-step sequential process for determining

whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a).[4] At step one, the ALJ

found that Plaintiff had engaged in substantial gainful activity since his alleged onset date, from

---

[4] "The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

    1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
    2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe impairment' must significantly limit the claimant's physical or mental ability to do basic work activities.
    3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
    5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation process).

May 1, 2019. through October 2, 2019. ECF No. 8-2 at 14-15, 29. The ALJ found, however, that "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity," and accordingly limited her remaining findings to the "period(s) the claimant did not engage in substantial gainful activity." *Id*. at 15. At step two, the ALJ found that Plaintiff had severe impairments, as relevant here, of degenerative disc disease of the cervical and lumbar spine, right shoulder rotator cuff tear, and obesity. *Id*. The ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the disability regulations deemed to be so severe as to preclude substantial gainful employment at step three. *Id*. at 17-18.

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC") to perform a reduced range of "light" work as defined in 20 C.F.R. § 404.1567(b),[5] with the following physical limitations:

> lifting and/or carrying twenty pounds occasionally and ten pounds frequently; frequent fingering and feeling with the bilateral upper extremities; and frequent overhead reaching with the right, dominant upper extremity.

*Id.* at 18. The ALJ then analyzed the medical evidence in the record, including the medical source opinions, in support of finding this RFC. *Id*. at 18-29.

At step four, the ALJ found that Plaintiff is able to do "past relevant work as a user

---

[5] The regulations define "light work" as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

support specialist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 29 (citing 20 C.F.R. § 404.1565). The ALJ therefore concluded at step four that Plaintiff was not disabled, as defined by the Social Security Act, from his alleged onset date of February 25, 2019, through the date of the ALJ's decision on May 25, 2022. *Id.* at 30.

## STANDARD OF REVIEW

In reviewing the final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—**such relevant evidence as a reasonable mind might accept as adequate to support a conclusion**.

*Id.* at 102-03 (cleaned up, emphasis added); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the Commissioner's choice between two fairly conflicting views").

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

On appeal, Plaintiff asserts three claims of error: that the ALJ erred at step four by improperly relying on the Vocational Expert ("VE") to define Plaintiff's past relevant work ("PRW") and to find Plaintiff was still capable of performing it; also erred at step four in finding that Plaintiff had performed his past work long enough for it to count as PRW under the applicable legal standard; and erred in the RFC in finding that Plaintiff could frequently manipulate objects with his hands and reach overhead with his right arm. Specifically, Plaintiff argues that the ALJ erred in the latter because it is not supported by substantial evidence, or the ALJ provided no reasoning to enable the court to review whether the finding is supported. *See* ECF No. 9 ("Opening Brief") at 4, 13-23.

I.      *Step Four: Plaintiff's PRW*

     A.      *Reliance on VE Testimony*

Plaintiff's first argument is that the ALJ improperly deferred to the VE for the definition of Plaintiff's past work (and its exertional demands) instead of the ALJ finding those facts herself, and the VE erroneously identified the past work as "user support specialist" instead of identifying it as a "composite" job. Plaintiff notes that "user support specialist" is classified as sedentary, while Plaintiff's testimony that he occasionally had to lift fifty-pound cash registers shows that his past work was not sedentary—or even light—but rather, medium. Opening Brief at 13-15. For the legal standard, Plaintiff argues that at step four, the ALJ must "1) evaluat[e] the claimant's RFC; 2) determin[e] the physical and mental demands of the claimant's past relevant work; and 3) determin[e] whether claimant has the ability to meet the demands of past relevant work despite the limitations found in the first phase." Opening Brief at 15 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).

"At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975–1982, at 812). "[S]uch information regarding work demands may be obtained from the claimant herself, her employer, or another informed source." *Sissom v. Colvin*, 512 F. App'x 762, 768-69 (10th Cir. 2013) (citing SSR 82–62, 1982 WL 31386, at *3 (1982)). In *Winfrey*, "the ALJ made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy." 92 F.3d at 1024. The ALJ then made

no findings about the claimant's ability to meet the mental demands of his PRW, and on appeal, the Commissioner "glosse[d] over the absence of the required ALJ findings, by relying on the testimony of the VE that plaintiff could meet [those demands] . . . given the mental limitations found by the ALJ." *Id*. at 1024-25.

The Tenth Circuit "discouraged" such an extensive delegation of fact finding responsibility to the VE at step four, but found that ALJs can nonetheless rely on VE testimony at that step so long as the ALJ ultimately made the required findings herself:

> We are not suggesting, as has the Fourth Circuit, *see Smith v. Bowen,* 837 F.2d 635, 637 (4th Cir. 1987), that the ALJ may not rely on VE testimony in making the necessary findings at step four. As SSR 82-62, and SSR 82-61, Soc. Sec. Rep. Serv., Rulings 1975-1982, 836, indicate, **a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work**. *Id.* at 811–12, 838. For example, if the ALJ determines that the claimant's mental impairment affects his ability to concentrate, the ALJ may ask the VE for information about the level of concentration necessary to perform the claimant's past relevant work. The VE's role in supplying vocational information at step four is much more limited than his role at step five, where he is called upon to give his expert opinion about the claimant's ability to perform work in the national economy. Therefore, **while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.**

*Winfrey*, 92 F.3d at 1025 (emphasis added). In *Sissom*, the Tenth Circuit found reversible error on this issue because, contrary to *Winfrey's* requirement, the ALJ did not obtain information from the claimant about the demands of her PRW, and "[t]he ALJ's written findings regarding Ms. Sissom's PRW are simply a reiteration of the VE's testimony regarding the exertional level and skill level of Ms. Sissom's PRW." 512 F. App'x at 768-69. Thus, the ALJ decisions in *Winfrey* and *Sissom* were reversed and remanded because they did not make any findings of their own with respect to the claimant's ability to perform their PRW.

Plaintiff argues that in this case, the ALJ did not make such findings but "merely asked the VE to classify plaintiff's past work based on the VE's own assessment of plaintiff's work background and testimony." Opening Brief at 15 (citing ECF No. 8-2 at 87-88, a portion of the hearing transcript). Plaintiff notes that "[w]hen, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Winfrey*, 92 F.3d at 1025.

However, unlike in *Winfrey* and *Sissom*, in this case the ALJ obtained from Plaintiff extensive information concerning the demands of his PRW, requested that Plaintiff's representative obtain further information from the former employer in question, and made her own fact findings in the final decision concerning Plaintiff's ability to meet those demands.

Specifically, in determining that Plaintiff could still perform his PRW, the ALJ stated as follows:

The vocational expert classified the claimant's past work as follows:

| DOT Title | DOT Code | SVP Level[6] | Exertional Level |
|---|---|---|---|
| user support specialist | 032.262-010 | skilled, SVP7 | sedentary |
| computer support technician | 039.264-010 | skilled, SVP7 | medium |

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform [his] past work **as a user support specialist actually and generally performed**. This is supported by the testimony of the vocational expert. **In response to a hypothetical question containing the claimant's vocational factors and residual functional capacity,** Mr. Miller specifically stated that such an individual could perform the claimant's past relevant work as a user support specialist.

The undersigned notes **the claimant worked as a user support specialist from 2017 through 2019**, for Par Tech, Inc., Insight Global, LLC, and Acara Solutions,

---

[6] "SVP" refers to "specific vocational preparation."

Inc. earning $25,206.96 in 2017, $29,220.33 in 2018, and $18,012.00 in 2019 (Exhibits 10D/3 and 7E/1). These earnings sufficiently establish the performance of this work activity at levels of substantial gainful activity. The record also shows that the claimant performed this job long enough to learn and adequately perform the duties of that job. Finally, this job was performed within 15 years of the Date of this Decision. Accordingly, this qualifies as past relevant work under SSR 82-62.

The undersigned notes that the claimant's representative reported in post-hearing correspondence that his past work at Par Tech, Inc. had been converted to a composite job after the onset of the COVID-19 pandemic, so she was unable to obtain a job description of his work there. However, **in a Work History Report, he did not report performing job duties[] as he described at the time of the hearing. In fact, in that work history report, which he completed closer in time to performing that work, [Plaintiff] reflects that it was a sedentary job, performed when seated, and he did not lift anything over ten pounds, lifting nothing more than his cubital items, laptop, PC, monitor to move to keep the area clean or rearrange as needed (Exhibit 7E/8). That reflects any lifting he did do was only occasional in nature, rather than a regular part of the job.**

At the hearing, he testified to something else, stating he was doing heavy lifting when creating scenarios in a lab. That was why the undersigned asked for a copy of his job description.

The letter supplied by the representative is not helpful, as it reflects that no true attempt to get the job description was provided, and they merely attempted to procure one off a general website, which had been updated given the pandemic and the change in the way work is now done. **The undersigned does not find [Plaintiff's] testimony consistent with his description in the work history report**. The vocational expert classified his work at Par Tech, Inc. as a user support specialist only and not as a composite job. **The evidence does not support that this work was a composite job** (Exhibits 7E/8 and 30E).

Pursuant to Social Security Ruling 00-4p, the undersigned finds that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT).

The undersigned accepts the testimony of the vocational expert and finds that the claimant is capable of performing his past relevant work as **a user support specialist**. Therefore, the claimant was not under a disability as defined in the Social Security Act at any time through the date of this decision.

ECF No. 8-2 at 29-30 (paragraph breaks and emphasis added). Exhibit 30E is the letter of

Plaintiff's representative stating that his former job has been changed, such that the task of setting

up training scenarios (which required heavy lifting) has been transferred to another position. ECF No. 8-6 at 440. The letter asserts that this subsequent change of the job shows that Plaintiff's job was a composite, but the letter provides no evidence in support of that conclusion. It instead states that Plaintiff was unable to obtain an accurate job description as it existed at the time. *Id*.

Exhibit 7E is the work history report that Plaintiff completed on March 20, 2020, in support of his DIB application. ECF No. 8-6 at 348-60. In that report, Plaintiff described four prior jobs within the last fifteen years. *Id*. at 348. In order of recency, he listed those jobs as: "1. PC engineer tech support, 2. Customer support tech, 3. PC support specialist, [and] 4. Level 2 Support technician." ECF No. 8-6 at 348. Each of these jobs was for a different employer. *Id*. The most recent job was with Acara, and the second most recent job was with Par Tech.

The ALJ found that given his earnings, Plaintiff's two most recent jobs—i.e., his jobs at Acara and Par Tech—counted as PRW. ECF No. 8-2 at 29. For both of those jobs, Plaintiff noted the heaviest weight he lifted was ten pounds, and the weight he frequently lifted was less than ten pounds. *Id*. at 354-55. In his narrative descriptions of those jobs, Plaintiff wrote that he "sat at desk . . . taking calls, resolving problem[s, and] keeping notes on problem and resolution," (*id*. at 354), and that he sat "at PC taking various troubleshooting calls . . . troubleshoot and . . . keep[] detailed notes of all." *Id*. at 355.

Plaintiff contends that the VE (and ALJ) should not have found his PRW was as a "user support specialist" but should instead have found that his PRW was a "composite" job between a sedentary and medium job, for which there is no analogous job in the Dictionary of Occupational Titles. Plaintiff points to his hearing testimony, in which as noted above, he testified that he occasionally lifted 50 pound cash registers at his job with Par Tech. ECF No. 8-2 at 71.

But the ALJ explained in her decision (and during the hearing itself, ECF. No. 8-2 at 95-96) that this testimony was inconsistent with Plaintiff's work history report. The ALJ found the work history report more persuasive on this point because only a few months elapsed between that job ending and the report, compared to the almost two and a half years that elapsed before his hearing testimony. ECF No. 8-2 at 30. And the ALJ noted that despite requesting that Plaintiff's representative submit a job description from Par Tech, Plaintiff's representative submitted only a letter reflecting that one was not available. The representative did not state that she or Plaintiff actually requested the information from the former employer. ECF No. 8-6 at 440 (Ex. 30E). Other than as to the exertional demands of PRW (*see Winfrey*, 92 F.3d at 1024), "[t]he claimant bears the burden of proving his or her inability to perform past relevant work." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993). It was therefore Plaintiff's burden to show he was unable to perform his PRW. Here, the ALJ rationally explained her reasoning for finding Plaintiff's work history report more accurate than his testimony concerning the lifting demands of his PRW, and the court sees no error in the way she resolved this factual conflict.[7] The ALJ thus did not err in adopting the VE's opinion that Plaintiff's PRW was as a user support specialist (a sedentary job), and not a composite job.

And again, the ALJ plainly made her own fact findings of Plaintiff's continued ability to perform his PRW in her final decision. She found that user support specialist is a sedentary job.

---

[7] The court notes that Plaintiff's work history report states that his third and fourth most recent jobs (for Clinica and Maxtor, respectively) involved lifting heavier weights of fifty or seventy pounds at times. ECF No. 8-6 at 356-57. Plaintiff does not assert, however, any error in the ALJ considering only his two most recent jobs as PRW. Nor does the court discern any error in this regard; Plaintiff had clearly left the heavier-lifting jobs by March 2017—two years before his asserted disability onset date.

ECF No. 8-2 at 29. Sedentary jobs are defined as:

> [i]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

In Plaintiff's RFC, the ALJ found that Plaintiff was capable of light work, including "lifting and/or carrying twenty pounds occasionally and ten pounds frequently." *Id.* at 18. The ALJ found only a limited restriction as to Plaintiff's dexterity (he was capable of "frequent" fingering and feeling, ECF No. 8-2 at 18), and no evidence to support a finding that Plaintiff could not "sit for prolonged periods." ECF No. 8-2 at 24 (discussing evidence that Plaintiff is able to travel approximately two hours each way for treatment). In short, the ALJ's discussion and findings support her conclusion that Plaintiff was capable of not only light work, but also his sedentary PRW.

Plaintiff instead emphasizes the testimony at the hearing, and the fact that the ALJ did not make findings of the PRW's demands before asking the VE to describe the PRW and presenting hypotheticals requesting the VE to opine whether someone with Plaintiff's vocational background and other attributes could perform his PRW. But the court sees no error here; the ALJ first established that the VE had reviewed the documents in the records and had listened to Plaintiff's testimony, i.e., that the VE's opinion testimony had sufficient factual basis. And *Winfrey* expressly notes that ALJs can rely on VE testimony at this step, so long as the ALJ

ultimately makes the findings herself. *Winfrey*, 92 F.3d at 1025. In short, the court finds no error on Plaintiff's first issue on appeal.

### B.   The Durational Requirement for PRW

Plaintiff argues that the ALJ was required to provide more reasoning for finding Plaintiff worked as a user support specialist long enough for that work to count as PRW. Specifically, he argues that "[p]ast relevant work is defined as work that (1) occurred within the past fifteen years (the so-called recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the so-called duration requirement), and (3) was substantial gainful employment." Opening Brief at 16 (quoting *Jozefowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987); 20 C.F.R § 404.1560(b)(1); SSR 82-62, 1982 WL 31386, at *1-2). Plaintiff argues that the ALJ's finding on the second element is not supported by substantial evidence because she provided no reasoning or detailed citation to the record.

Plaintiff recognizes that he performed the user support specialist work for 33 months: he started the Par Tech job in March 2017 and ended the Acara job in October 2019. But, he argues, there is no record evidence that 33 months was long enough to learn the job, and the ALJ did not explain why she found this time period sufficed. Plaintiff argues that in order to be PRW, he must have done the job long enough to learn and achieve "average performance" for the job. Opening Brief at 17 (quoting SSR 82–62, 1982 WL 31386, at *2). For a job with an SVP of seven that the ALJ found for user support specialist, it takes "[o]ver [two] years up to and including [four] years" to become proficient. *Id*. (quoting Dictionary of Occupational Titles, App. C, § II).  Plaintiff essentially argues that because he was not at the top end of that range, the ALJ had to explain why she found 33 months sufficed for the durational requirement, rather than simply stating, as she did here: "The record also shows that the claimant performed this job long

14

enough to learn and adequately perform the duties of that job." ECF No. 8-2 at 29.

In response, the Commissioner argues it was Plaintiff's burden to prove that he could not perform his PRW. ECF No. 12 ("Response Brief") at 10 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Plaintiff replies that it was nonetheless the ALJ's responsibility to state her reasoning on this element, to enable the court to review her conclusion for substantial evidentiary support. ECF No. 13 at 5.

Plaintiff does not cite any case finding reversible error in similar circumstances. In *Jozefowicz*, for instance, the claimant had only performed her "telephone verification work" for eight months, and the court found no error in the ALJ having considered it PRW. 811 F.2d at 1355-56. Here, the ALJ expressly found the record showed Plaintiff did the job long enough to have learned and performed it adequately. The ALJ could have provided more detailed reasoning or detailed citations to the record on this element, but the court is able to follow the ALJ's reasoning sufficiently—particularly from the exhibit that the ALJ cites in this section, Ex. 7E—and this is all that is required for substantial evidence review. "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up). *See also Nielsen v. Comm'r, SSA,* No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements).[8]

---

[8] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.")

Finally, the court notes that Plaintiff included a detailed description of the tasks and skills required for each of his prior jobs in his work history report. ECF No. 8-6 at 360. He also testified that he left Par Tech for the Acara job "because there was a better chance for the advancement into the IT support specialist instead of the phone support." ECF No. 8-2 at 71. His most recent job ended because the employer "said we can't work with the accommodations that you have now, so we're going to let you go." *Id*. at 69. That is, Plaintiff testified that he was not let go from his PRW because of performance issues. Therefore, any error in the ALJ's not providing more detailed reasoning for finding that Plaintiff had performed the job of user support specialist long enough to constitute PRW was harmless. *See, e.g.*, *Armijo*, 385 F. App'x at 792 (harmless error if no reasonable administrative factfinder could have resolved the factual matter in any other way).

## II.     *Plaintiff's RFC*

This leaves Plaintiff's argument that the ALJ's finding that Plaintiff can "frequently" finger and feel objects, and "frequently" raise his right arm overhead is not supported by substantial evidence. Plaintiff refers to these limitations as limitations on manipulation, and the court will do likewise.

Plaintiff points out that no medical source opined that Plaintiff could perform these functions "frequently." Rather, the prior administrative findings (of Matheen Khan, M.D., and Jeffrey Holtgrewe, M.D.,) found no limitations on manipulation whatsoever, while Plaintiff's treating provider (Katherine Weisenborn, PA-C) opined that Plaintiff had much greater limitations ("rarely and "seldom") in this regard. Opening Brief at 18-19. The ALJ found the

---

(cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

administrative findings of Dr. Khan and Dr. Holtgrewe "persuasive overall" and found Ms. Weisenborn's opinion unpersuasive, but then the ALJ also found that Plaintiff was limited to "frequent" manipulation with his hands and arms without explaining why she chose that level of limitation.

In assessing the medical opinion evidence, the ALJ first summarized Plaintiff's testimony, Plaintiff's reports of activities of daily living ("ADLs"), and numerous treatment records relating to Plaintiff's physical impairments. ECF No. 8-2 at 18-25. The ALJ then addressed the medical opinions, in chronological order:

> Matheen Khan, M.D. reviewed the evidence on behalf of the Division of Disability Determination ("DDD") on June 2, 2020. Dr. Khan opined that the claimant could perform work at the light exertional level, the full exertional range. Jeffrey Holtgrewe, M.D. also reviewed the evidence on behalf of the DDD on October 8, 2021, and affirmed the assessment of Dr. Khan.
> **The undersigned finds the opinions of the DDD reviewing physicians to be persuasive overall, as they are generally consistent with and substantiated by the objective medical evidence of record**. However, factoring in the claimant's subjective complaints related to numbness in the hands, in addition to limiting the claimant to light exertional activities, the undersigned has accorded additional limitations, restricting him to frequent fingering and feeling bilaterally. He is also limited to frequent overhead reaching with the right upper extremity because of right shoulder complaints (Exhibits 2A and 4A).

ECF No. 8-2 at 26 (paragraph break added).

Next, the ALJ summarized the opinions of Ms. Weisenborn. The portion of the ALJ's discussion that is pertinent to the manipulative limitations is as follows:

> Katherine Weisenborn, PA-C completed an assessment of the claimant's physical functioning on January 12, 2022. Ms. Weisenborn opined that the claimant . . . could seldom reach with the right upper extremity and rarely finger or handle. With the left upper extremity, he could seldom reach, handle, and finger. Ms. Weisenborn is a physician's assistant who practices at the Center for Spine and Orthopedics in Thornton, Colorado. The claimant saw her in 2019, and in 2021 and

17

2022 related to his cervical spine surgeries.

**The undersigned does not find this opinion of Ms. Weisenborn to be persuasive, as it is inconsistent with and unsupported by her own notes, as well as the overall evidence of record.** Ms. Weisenborn provided no accompanying narration to support her findings. The claimant saw her on that date [of her opinion] for routine follow-up after the June 2021 surgery. . . . On exam then, he had full range of motion without deficit of his cervical spine. He had intact sensation from C5-T1. He had normal 5/5 strength throughout his left upper extremity, except it was slightly reduced at 4/5 in finger intrinsics. In his right upper extremity he had normal strength at 5/5 in his right bicep and right wrist; had 4/5 strength in the right deltoid, and had 3/5 strength in the right tricep and in finger intrinsics. He had findings then of positive Durkan and Tinel's of the right carpal tunnel. He still had improving thrombophleibitis of the left antecubital fossa, and the PICC line was on the right side, with some generalized swelling below this in the hand. His hands were warm and well perfused with brisk capillary refill. . . . **These findings do note some reduced strength in his hands, particularly on the right, but Ms. Weisenborn thought this could be related to carpal tunnel, for which she gave an injection. As she also indicated, he then had a PICC line in his right arm, due to the infection in his left, and there was some swelling below the PICC line in the hand. This could factor into her findings then.**

He saw another doctor, Dr. Radaideh one week prior for his left arm SVT, and he found that the claimant's pain in his left upper extremity had resolved with no palpable cord, and the claimant's left arm was "back to normal." On exam, he noted no focal motor deficit, normal gait, and his extremities had no cyanosis, clubbing, or edema (Exhibit 48F/1-2). Those findings do not support Ms. Weisenborn's findings as they relate to the claimant's left upper extremity. . . .

**Earlier findings from Ms. Weisenborn also noted better findings in motor strength in his upper extremities, at 5/5 (see Exhibit 27F/5, 9, 11), and these findings seem to be of more recent origin.** There is no support for the extreme limitations in the use of his right shoulder, and even Dr. Likes, the orthopedist who evaluated his right shoulder noted he could raise the arm past 90 degrees, but still has pain (Exhibit 17F/1).

As discussed above, the evidence shows no significant issue in use of the left upper extremity. While the claimant has some limits in use of the right upper extremity, there is no support that he can "seldom" or "rarely" use the right upper extremity. There is no support that he is unable to make a fist and Ms. Weisenborn's notes actually reflect otherwise. . . .

A Return to Work Status was completed at the Center for Spinal Disorders on September 29, 2021, although the signature on this form is not legible. The form

indicated that the claimant . . . was unable to grip, type, or lift with his right hand. . . . The undersigned notes that the claimant did see Ms. Weisenborn on the day this form was completed. **Ms. Weisenborn's treatment records fail to support the limitations assessed in this form.** In fact, at that September 29, 2021, visit, . . . [h]is cervical spine had full range of motion without deficit and sensation was intact. Motor examination showed that he had some reduced strength, principally in the triceps and finger intrinsics on the right. Examination of the left upper extremity was essentially normal. After this visit with Ms. Weisenborn, he saw Dr. White of infectious disease. Here, he reported some ongoing neck pain, essentially unchanged from his perspective. He reported no radiation. He had some pains that shot down his right arm as well. Dr. White noted that he had some ongoing neck and right wrist issues. It is unclear if his hand issues are cervical radiculopathy or carpal tunnel, as he did not do any relevant exam. * * *

[H]e [also] saw Dr. McCranie, in consult one week . . . [after March 18, 2019], and here he . . . had good findings on exam then, with . . . normal motor exam in the bilateral upper extremities with 5/5 strength, and sensation normal to pinprick and vibration (Exhibit 5F/56-60).

*Id*. at 26-28 (emphasis added).

Plaintiff argues that the ALJ erred in finding a limitation level that is between the two extremes of Dr. Khan and Dr. Holtgrewe on the one hand, and Ms. Weisenborn on the other. For the reasons that follow, the court respectfully disagrees.

For claims filed on or after March 27, 2017—as is the case here—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. § 404.1520c.[9] Instead, under the applicable regulation, the ALJ will consider the persuasiveness of each medical source opinion using five factors: (1) supportability;

---

[9] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

(2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)-(c)(5). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Consistency thus "is an

all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing §§ 416.920c(b)(2)-(3), 404.1520c(b)(2)-(3)).

The court reviews the ALJ's evaluation of the medical sources' opinions to ascertain whether the ALJ applied the correct legal standards and whether "substantial evidence supports the ALJ's decision" to find those opinions persuasive or unpersuasive, as the case may be. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ decision that found some opinions of a medical source to be persuasive, and others unpersuasive). *See also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at *11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by

substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen*, 2022 WL 15570650, at *5 (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Here, the ALJ applied the correct legal standards. The ALJ states that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c. ECF No. 8-2 at 18. The ALJ analyzed in detail why she found each of the medical opinions persuasive or unpersuasive. Accordingly, the ALJ applied the correct legal standards set forth in the regulations that govern how the ALJ assesses medical source opinions. *See Miles*, 2021 WL 3076846, at *3; *see also P.T. v. Comm'r of Soc. Sec.,* No. 22-cv-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (ruling that the court was able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

The ALJ's findings are also supported by substantial evidence. As noted above, the ALJ expressly articulated why she found Dr. Khan's and Dr. Holtgrewe's opinions persuasive overall, but that the medical evidence nonetheless showed Plaintiff had some manipulation limitations. The ALJ provided a detailed analysis of that medical evidence. She also analyzed in great detail why she found Ms. Weisenborn's opinions of greater restrictions on manipulation to be unpersuasive. The ALJ thus addressed both the supportability and consistency factors as to each of the three medical sources' opinions.

The Commissioner also correctly points out that the Tenth Circuit permits ALJs to "temper" the extremes of medical source opinions for the claimant's benefit. Response Brief at

11-12 (citing inter alia *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). Plaintiff replies that there was no "tempering," because the ALJ did not specifically explain how she could find the opinions of Dr. Khan and Dr. Holtgrewe persuasive overall but nonetheless depart from those opinions as to limitations on manipulation. But the ALJ was not required to address each opinion (or sub-opinion) in finding these doctors' opinions persuasive:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). Importantly, the court is able to follow the ALJ's reasoning with respect to each of the doctors' opinions.

In sum, because substantial evidence supports the ALJ's findings concerning Plaintiff's limits on manipulation in his RFC, the court finds no reversible error.

## CONCLUSION

For the reasons set forth above, it is ORDERED that the decision of the Commissioner is AFFIRMED. Judgment shall enter accordingly.

Dated: September 30, 2024                              BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

23